222 N.J. Super. 313 (1988)
536 A.2d 1283
EDWIN BOYLAN, JOHN E. BUTLER, DOMINIC G. FERLAUTO, THOMAS FITZPATRICK, JOHN W. GARDNER, EDWARD J. GRAY, WILLIAM P. HAYES, JOHN HUSSEY, JAMES N. KARAS, WILLIAM N. LUCK, THOMAS W. MARTIN, WILLIAM R. NIXON, ALBERT J. SHLEEH, PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY, CITY OF JERSEY CITY, TOWNSHIP OF IRVINGTON, TOWNSHIP OF MONTCLAIR, CITY OF NEWARK, DEFENDANTS-RESPONDENTS.
WILLIAM J. COMER, FIRE CHIEF OF THE CITY OF PATERSON; KENNETH PETERSON, FIRE CHIEF OF THE CITY OF PASSAIC; GEORGE SBARRA, FIRE CHIEF OF TOWNSHIP OF BELLEVILLE; JAMES HOUN, FIRE CHIEF OF THE CITY OF HOBOKEN, EDWARD WOODS, FIRE CHIEF OF THE CITY OF MARGATE CITY; JOHN W. GARDNER, FIRE CHIEF OF THE TOWNSHIP OF MONTCLAIR; AND, NEW JERSEY PAID FIRE CHIEFS' ASSOCIATION, PLAINTIFFS-APPELLANTS,
v.
THE CITY OF PATERSON, THE CITY OF PASSAIC, THE TOWNSHIP OF BELLEVILLE, THE CITY OF HOBOKEN, THE CITY OF MARGATE CITY, THE TOWNSHIP OF MONTCLAIR AND ALL MUNICIPALITIES OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
ALEXANDER M. BEATTIE, JR., PLAINTIFF-APPELLANT,
v.
CITY OF CLIFTON, AND THE STATE OF NEW JERSEY, DIV. OF PENSIONS, DEFENDANTS-RESPONDENTS. (A-4833-86T5)
GIOACCHINO FIORENTINO, FIREMENS MUTUAL BENEVOLENT ASSOCIATION  LOCAL 27; DAVID SLAUGHTER; AND CITY OF OCEAN CITY, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY DEPARTMENT OF THE TREASURY  DIVISION OF PENSIONS; HON. DOUGLAS R. FORRESTER, DIRECTOR OF THE DIVISION OF PENSIONS; AND THE POLICE AND FIREMEN'S RETIREMENT SYSTEM OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
(A-4578-86T5, A-4833-86T5, A-4503-86T5)
Superior Court of New Jersey, Appellate Division.
Argued and Submitted November 2, 1987.
Decided January 20, 1988.
*315 Before Judges PETRELLA, DREIER and BAIME.
Ernest G. Ianetti argued the cause in A-4578-86T5 for Edwin Boylan, et al (Ernest G. Ianetti on the brief; Brown & Brown, P.C., of counsel).
Patrice M. Connell, Deputy Attorney General, argued the cause for respondents in A-4578-86T5 (Michael R. Clancy, Deputy Attorney General, of counsel; Patrice M. Connell on the brief).
Arnold Steinhaus appeared for Township of Irvington in A-4578-86T5.
*316 Glenn A. Grant, Corporation Counsel, for City of Newark in A-4578-86T5 (Alison Brown Jones, Assistant Corporation Counsel, on the brief).
Schlesinger, Schlosser, Foy & Harrington on letter in lieu of amicus curiae brief on behalf of Firefighters' Association of New Jersey in A-4578-86T5 (Thomas A. Gonzoph on letter in lieu of amicus curiae brief).
Segreto & Segreto, attorneys for appellants William J. Comer, et al in A-5124-86T5 (James V. Segreto of counsel and on the brief).
Ralph L. DeLuccia, Jr. Corporation Counsel, for respondent City of Paterson in A-5124-86T5 (Ralph L. DeLuccia on statement in lieu of brief).
John J. McKniff, attorney for respondent City of Passaic in A-5124-86T5 (John J. McKniff on letter of nonparticipation).
Frank J. Cozzarelli, attorney for respondent Township of Belleville in A-5124-86T5 (Frank J. Cozzarelli on statement in lieu of brief).
Joseph C. Dickinson, attorney for respondent Township of Montclair in A-5124-86T5 (Joseph C. Dickinson on statement in lieu of brief).
Mervyn R. Montgomery attorney for appellant Alexander M. Beattie, Jr. in A-4833-86T5 (Mervyn R. Montgomery on the brief).
Gorman & Goodkin, attorneys for appellants Gioacchino Fiorentino, et al in A-4503-86T5 (Bruce M. Gorman on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondents in A-5124-86T5, A-4833-86T5 and A-4503-86T5 (Michael R. Clancy, Deputy Attorney General of counsel; Patrice M. Connell, Deputy Attorney General, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
*317 The appeals we consider in this opinion involve challenges to the enforcement of early mandatory retirement provisions for law enforcement officers and firefighters who are enrolled in the Police and Firemen's Retirement System (P & FRS) or the Public Employees Retirement System (PERS).[1]
The facts are not disputed in any of these appeals. All plaintiffs were advised by a February 19, 1987 directive issued by the Division of Pensions (Division) in the State Department of the Treasury, based on legal advice from the Attorney General, that they had to retire because they were over age 65. In the appeal brought by Edward Boylan and others, all of the plaintiffs serve as officers in various positions in police and fire departments. The plaintiffs include one police chief, four deputy chiefs, three police captains and one detective. They also include one fire chief, two battalion chiefs and two captains from fire departments. An additional plaintiff named in the complaint is one superintendent Nixon. Each plaintiff is between the age of 65 and 70 years and is a member of either the P & FRS or the PERS.
In the Comer appeal plaintiffs, paid fire chiefs in their respective municipalities, are between ages 65 and 70, and are members of the P & FRS. In the third appeal Beattie is a deputy fire chief who is 68 years of age. In the Fiorentino appeal the plaintiffs include a fire captain, the City of Ocean *318 City, a collective bargaining representative and Firemen's Mutual Benevolent Association, Local 27.
The plaintiffs in each of these matters, with the exception of the Beattie appeal, instituted suit seeking injunctive relief against the enforcement of the mandatory retirement requirement. The matters were transferred to the Appellate Division in three of the appeals on orders entered by the trial court. Beattie took a direct appeal to this court from the mandatory retirement directive issued by the Division of Pensions and sought and obtained injunctive relief pending disposition of the appeal.
We hold that supervisory law enforcement officers who are not directly involved in law enforcement and supervisory firefighters who are not directly and primarily involved in firefighting are not subject to the federal exception to the allowed mandatory retirement of certain law enforcement officers and firefighters authorized by the 1986 federal amendments to the Age Discrimination in Employment Act and its general prohibitions against age discrimination.

I
Although mandatory retirement, particularly for policemen and firemen, is not an unusual requirement, clouds of uncertainty arose as a result of competing concepts. On the one hand, employees and their unions through the collective bargaining process sought pension and retirement programs with greater benefits and the flexibility for earlier retirement. On the other hand, as life expectancies have grown, there has been concern expressed about refusals to hire people because of advancing age as well as forced early retirements. Out of this competition between employer and employee and old and young arose several other issues: the interest of some employees in early mandatory retirement for supervisors and people with greater seniority to create vacancies for younger people, as *319 well as objections to forced retirement based on age without a reasonable and bonafide occupational requirement.[2]
New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 et seq. (L.A.D.), and its amendments since its original adoption in 1945, illustrates the competing interests of the young and the old. N.J.S.A. 10:5-2.1 provides that:
Nothing contained in this act or in the act to which this is a supplement shall be construed to require or authorize any act prohibited by law ... nor to prohibit the establishment and maintenance of bonafide occupational qualifications or the establishment and maintenance of apprenticeship requirements based upon a reasonable minimum age nor to prevent the termination or change of the employment of any person who in the opinion of his employer, reasonably arrived at, is unable to perform adequately his duties, nor to preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standard, nor to interfere with the operation of the terms or conditions and administration of any bonafide retirement, pension, employee benefit or insurance plan or program. [emphasis supplied.]
New Jersey's enactments, discussed infra, were affected in various ways by developments with respect to the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA), which became effective in 1968, and which was the subject of subsequent conflicting amendments. The ADEA made findings that arbitrary discrimination in employment because of age "burdens commerce and the free flow of goods and commerce." 29 U.S.C. § 621(a)(4). It barred discrimination in hiring or discharge on the basis of age, except where there either was "a bonafide occupational qualification" (BFOQ), or a pension or retirement plan was not a subterfuge *320 to evade the purposes of the ADEA. 29 U.S.C. § 623(f)(1) and (2).
In 1974 the ADEA expanded its definition of the term "employer" to include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency...." 29 U.S.C. § 630(b)(2). Nevertheless, the states, including New Jersey, did not feel the impact of the ADEA at that time. This law was not considered applicable to the states because of a Tenth Amendment question, or at least that was an unresolved question. While the issues were being challenged in various federal courts, federal firefighters and law enforcement personnel were essentially exempt from the coverage of the act by virtue of the federal Civil Service Laws. Cf. 5 U.S.C. § 8335(b) and 5 C.F.R. § 831.09 et seq. (regulations relating to 5 U.S.C. § 8335(b)).
In 1983 the United States Supreme Court decided EEOC v. Wyoming, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), which held that the extension of the ADEA to the states and local governments was not violative of the Tenth Amendment, but constituted a valid exercise of federal authority under the Commerce Clause. Essentially in response to that opinion then Attorney General Kimmelman issued a formal opinion which concluded that pension provisions for uniformed police officers and firefighters which required mandatory retirement prior to age 70 were unenforceable under the then effective provisions of the ADEA, unless it could be demonstrated that mandatory retirement ages were a bonafide occupational qualification. 5 Op.N.J.Att'y Gen. (1983).
The New Jersey Legislature then amended the L.A.D. in 1985 to provide in N.J.S.A. 10:5-2.1:
Nothing contained in this act or in P.L. 1945, c. 169 (C. 10:5-1, et seq.) shall be construed to require or authorize any act prohibited by law ... nor to interfere with the operation of the terms or conditions and administration of any bonafide retirement, pension, employee benefit or insurance plan or program, including any State or locally administered public retirement system, provided that *321 the provisions of those plans or programs are not used to establish an age for mandatory retirement. [emphasis supplied.][3]
Also in 1985 N.J.S.A. 10:5-12 was amended to provide:
It shall be unlawful employment practice, or, as the case may be, an unlawful discrimination:
a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, sex or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; provided, however, it shall not be an unlawful employment practice to refuse to accept for employment an applicant who has received a notice of induction or orders to report for active duty in the armed forces; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment any person on the basis of sex in those certain circumstances where sex is a bonafide occupational qualification, reasonably necessary to the normal operation of the particular business or enterprise; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age; ... provided further that it shall not be an unlawful employment practice to require the retirement of any employee who for the two-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if that employee is entitled to an immediate, non-forfeitable annual retirement benefit from a pension, profit sharing, savings or deferred retirement plan, or any combination of those plans, of the employer of that employee which equals in the aggregate at least $27,000.00; and provided further that an employer may restrict employment to citizens of the United States where such restriction is required by federal law or is otherwise necessary to protect the national interest.[4]
In the same 1985 amendments N.J.S.A. 10:3-1 was amended to provide that except for certain categories of employees, no governmental employees
... shall be required to retire upon the attainment of a particular age unless the public employer can show that the retirement age bears a manifest *322 relationship to the employment in question or that the person in the service of the State, or of any county or municipality thereof, is unable to adequately perform his duties.
Excepted from this prohibition were certain categories of State employees, including, to the extent involved here, "a member of a police or fire department employed in the service of the State or of any county or municipality thereof...." Ibid.
The next significant event insofar as it affects these appeals was the adoption by Congress in P.L. 99-592 of additional amendments to the ADEA in 1986 (the 1986 amendments) which became effective January 1, 1987 and were to be effective only until March 3, 1993. During this time studies were to be conducted by the United States Secretary of Labor and the Equal Employment Opportunity Commission and Congress was provided with the opportunity to further study and consider whether physical and mental fitness tests could be used to measure a law enforcement officer's or firefighter's ability to perform his duties. See 29 U.S.C. § 622.
The 1986 amendments accomplished several things. They limited applicability of the Act to individuals who are at least 40 years of age, 29 U.S.C. § 631, and, rather than eliminating the federal exemption for policemen and firemen, resulted in an amendment to the ADEA which extended the federal exemption from the act for firefighters and law enforcement officers to the states. Thus, 29 U.S.C. 623(i) was enacted to provide:
(i) [Firefighters and law enforcement officers attaining hiring or retiring age under State or local law on March 3, 1983.][5]
It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken 
(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable State or local law on March 3, 1983, and

*323 (2) pursuant to a bonafide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter. [29 U.S.C. 623(i)]
Law enforcement officers and firefighters were defined in 29 U.S.C. § 630 by the adding of the following two definitional subparagraphs:
(j) The term "firefighter" means an employee, the duties of whose position are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment, including an employee engaged in this activity who is transferred to a supervisory or administrative position.
(k) The term "law enforcement officer" means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of a State, including an employee engaged in this activity who is transferred to a supervisory or administrative position. For the purpose of this subsection, "detention" includes the duties of employees assigned to guard individuals incarcerated in any penal institution.
The federal regulations relating to federal Civil Service definitions of law enforcement officers are inapposite to our resolution of the issues on this appeal, particularly in view of the peculiar two-tiered federal definition of law enforcement officer set forth in 5 C.F.R. § 831.903(a).[6] See also Johnson v. Mayor, and Baltimore City Council, 472 U.S. 353, 357, 105 S.Ct. 2717, 2719-29, 86 L.Ed.2d 286, 290 (1985).
Apparently at the request of the Director of Pensions, the present Attorney General, on February 11, 1987 issued a formal opinion regarding the 1986 amendments to the ADEA. 12 Op.N.J.Att'y Gen. (1987). The request was in response to the 1986 amendments and concluded that the mandatory retirement provisions in the State pension laws which were in effect on March 3, 1983 were now enforceable. The opinion letter noted that although the 1986 amendments became effective January 1, 1987, it might take several months to reimplement the *324 pension laws which had been held in abeyance because of the Federal preemption. Accordingly, the Division of Pensions determined that the mandatory retirement provisions governing P & FRS and the "law enforcement officer" provisions of PERS were to be reimplemented as of June 1, 1987.
Under PERS mandatory retirement was required for law enforcement officers[7] at age 65, unless the officer was a veteran and did not have 20 years of creditable service. N.J.S.A. 43:15A-59. Under P & FRS mandatory retirement for policemen and firemen was required at age 65. N.J.S.A. 43:16A-5. Essentially the Attorney General advised the Division of Pensions that the mandatory retirement age and maximum hiring age provisions "in the various State uniformed services pension statutes must be again enforced."

II
Plaintiffs in the Boylan and Comer appeals argue that enactment of the 1986 amendments to the ADEA should not be construed to allow reinstatement of New Jersey's mandatory retirement ages for law enforcement officers and firefighters which had been held unenforceable in the Attorney General's 1983 opinion. See 5 Op.N.J.Att'y Gen. (1983). In concluding in 1986 that mandatory retirement ages were no longer unenforceable under the 1986 amendments to the ADEA, the Attorney General relied on General Electric Co. v. Packard Bamberger & Co., 14 N.J. 209 (1953). He opined that the removal by the 1986 amendments of the federal preemption of retirement ages *325 previously held to exist in the ADEA had the result of reinstating New Jersey's statutes in effect on March 3, 1983.[8]
Appellants Boylan and Comer argued that the extension of the ADEA to the states effectively repealed New Jersey's statutes authorizing mandatory retirements at specified ages. They then argued, relying essentially on N.J.S.A. 1:1-3.2, that the repealed statutes are not revived by the 1986 federal enactment, but must be specifically reenacted by the New Jersey Legislature.
The flaw in this argument is that the federal legislation could not repeal state statutes, but only resulted in a limited preemption with respect to certain portions of New Jersey's pension statutes. Hence, after the decision in E.E.O.C. v. Wyoming, supra (460 U.S. at 226, 103 S.Ct. at 1054, 75 L.Ed.2d at 18), every state was precluded from enforcing mandatory retirements prior to age 70. The law in New Jersey with respect to the viability of a state statute when preemption is withdrawn is governed by Packard Bamberger. There, in the context of the relaxation of federal restrictions against operation of a state statute with respect to interstate commerce, the court held that reenactment of the state statute was not necessary. General Electric Co. v. Packard Bamberger & Co., supra (14 N.J. at 218). The court adhered to the proposition that:
`Where a state statute is declared unconstitutional or invalid because it is in conflict with federal legislation, the state statute is in effect merely unenforceable or suspended by the existence of the federal legislation.' [Citations omitted.] `... [T]he repeal of the federal statute reinstates or revives the state law without an express reenactment by the state legislature.' [Id. at 218-219; citation omitted.]
The court concluded in Packard Bamberger that the same principle "holds true where by express enactment Congress removes an obstacle to the operation of state legislation," unless there is some other constitutional violation. Id. See *326 also I Sutherland, Statutory Construction (3 ed. Horack, 1943). Hence, the Attorney General correctly perceived that the first result of the 1986 federal amendments to the ADEA was to substantially reinstate New Jersey's public employee pension laws as they existed on March 3, 1983, but with one undealt with qualification discussed hereinafter.

III
We next turn to the argument that the ADEA does not apply to New Jersey's pension plans, or at the very least, that certain law enforcement officers not directly involved in law enforcement and certain firefighters not directly and primarily involved in firefighting duties are not subject to the federal exemption to the ADEA prohibitions against mandatory early retirement. Initially, we observe that although a formal interpretation of statutory provisions by the Attorney General may be "strongly persuasive" see Evans Aristocrat Industries, Inc. v. Newark, 140 N.J. Super. 226, 229-230 (App.Div. 1976), aff'd 75 N.J. 84 (1977), that opinion is not binding on us. Crifasi v. Governing Body of Bor. of Oakland, 151 N.J. Super. 98, 101 (Law Div. 1977), rev'd in part on other grounds, 156 N.J. Super. 182 (App.Div. 1978).
It is clear that the 1986 amendments to 29 U.S.C. § 623 allowed the states to enforce their retirement laws which were in effect on March 3, 1983 if they were established as bonafide hiring or retirement plans that were not a subterfuge to evade the purposes of the ADEA. We have no hesitancy in accepting the proposition that neither P & FRS nor PERS are susceptible to attack as a subterfuge. Indeed, no party to these appeals even so asserts. Both plans have long-standing existence and the retirement benefits paid are substantial in relation to the terms of employment. See Zinger v. Blanchette, 549 F.2d 901, 909 (3rd Cir.1977) (railroad employee forced to retire under bonafide retirement plan); Brennan v. Taft Broadcasting Co., 500 F.2d 212, 217 (5th Cir.1974). Further, the pension programs were designed to provide for actuarial soundness, Spina *327 v. Consolidated Police etc. Pension Fund Com., 41 N.J. 391, 396 (1964); Siere v. Police and Fire Comm'n of Orange, 6 N.J. 586, 591 (1951), thereby promoting a valid business purpose. See McMann v. United Airlines, 542 F.2d 217, 221 (4th Cir.1976), rev'd 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977).[9]
The 1986 amendments to the ADEA provided an exemption from the anti-age discrimination provisions for governmental employers in the hiring of firefighters and law enforcement officers pursuant to bonafide retirement plans which were in effect under State law on March 3, 1983 and are not subterfuges to evade the purposes of the federal act. 29 U.S.C. § 623(i). The difficulty arises here due to the definition of the terms "firefighter" and "law enforcement officer" contained in 29 U.S.C. § 630(j) and (k). Essentially firefighter is defined as someone whose duties are "primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment." 29 U.S.C. § 630(j) (emphasis supplied). The definition goes on to include "an employee engaged in this activity who is transferred to a supervisory or administrative position." Id. (emphasis supplied). Likewise, "law enforcement officer" is defined as someone whose duties are "primarily the investigation, apprehension or detention of individuals suspected or convicted of offenses against the criminal laws of a State." 29 U.S.C. § 630(k) (emphasis supplied). It also includes "an employee engaged in this activity who is transferred to a supervisory or administrative position." Id. (emphasis supplied).
Even viewing the definition of firefighters and law enforcement officers as limited to personnel primarily and directly involved in firefighting or primarily involved in law enforcement, *328 it is clear that the states are excepted from the general ADEA prohibitions against early mandatory retirement for those categories of individuals. We would have no difficulty in determining that Congress also created an exception to this general exception for certain supervisory public employees by its clear emphasis on primary and direct duties. However, the addition to the definitions in 29 U.S.C. § 630(j) and (k) of the phrase "... including an employee engaged in this activity who is transferred to a supervisory or administrative position"[10] creates an interpretation issue which has not been heretofore resolved or clarified and not capable of easy resolution. On the surface the transfer qualification might be considered broad enough to include the earlier limiting language. Indeed, the language has no clear or expressed purpose. Unlike the New Jersey statute, federal law allows an employee required to retire by 5 U.S.C. § 8335(b) to be reemployed until age 60. The implementing federal Civil Service regulations go on to state:
The prohibition against the reemployment of firefighters and law enforcement personnel after age 60 applies only to those positions involved with the performance of actual firefighting or law enforcement duties as described in [5 C.F.R.] §§ 831.903(a) and 831.904(b). [5 C.F.R. § 831.906]
The referenced definitions in the federal Civil Service regulations draw a dichotomy in the definition of "law enforcement officer" which essentially limits it to persons whose primary duties "require the investigation, apprehension or detention of persons suspected or convicted of offenses against the criminal laws of the United States" as opposed to only occasional or incidental involvement. 5 C.F.R. § 831.903(a).[11] Likewise, the *329 regulations appear to limit the definition of "firefighter" to "an employee whose primary duties ... require the performance of work directly connected with the control and extinguishment of fires, or the maintenance and use of firefighting apparatus and equipment." 5 C.F.R. § 831.904(a).
Our interpretation of the ADEA is not controlled by the application or interpretation of other federal statutes and federal Civil Service regulations because of the differences in the categories of law enforcement officers and firefighters, and because the federal firefighters and law enforcement officers have greater exemption from the ADEA. In our view, the word "transferred" in the applicable definitions in 29 U.S.C. § 630 are not meant to refer to promotions or direct appointments to positions of personnel who held lower positions in the department. To so read the quoted transfer clause would render meaningless and surplusage the words "primarily" and "directly" in the definition of "firefighter," and the word "primarily" in the definition of "law enforcement officer." See Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 521 (1984); Matter of Sussex County Mun. Utilities Auth., 198 N.J. Super. 214, 216-217 (App.Div. 1985), certif. den. 101 N.J. 267 (1985). In statutory construction we must strive to give effect to all the words of the statute in order to effectuate the legislative intent. See Monmouth County v. Wissell, 68 N.J. 35, 43 (1975).
In the absence of a clear Congressional definition of the quoted transfer clause, we are free to interpret it in a way which comports with the general sense of the federal statute *330 and the salutary purpose of the ADEA to bar discrimination in discharging an employee based on arbitrary age classifications.
Moreover, as we have noted, the federal statutes and regulations regarding firefighters and law enforcement officers were primarily concerned with eligibility for pension benefits and the method of obtaining entitlement to credits towards retirement. See Ellis v. United States, 610 F.2d 760, 764-765, 222 Ct.Cl. 65 (1979). Also, transfers to supervisory positions in the federal Civil Service system had to follow employment as a supervisor without a break in service of more than three days for credits to count. See 5 C.F.R. §§ 831.903(c)(1)(i) and 831.904(c)(1)(i). Hence, an appointment to a supervisory position would not result in obtaining such pension credits unless a firefighter primarily and directly engaged in firefighting and a law enforcement officer primarily engaged in specified law enforcement activities.
Because the federal regulations are concerned primarily with eligibility for merit bonuses and obtaining credits under the federal retirement acts, they provide little guidance here. Thus, the language regarding persons "transferred" to supervisory positions seems to exist as a remnant of hastily drawn federal amendatory legislation which carried over inapplicable parts of federal definitions from the federal Civil Service regulations into the exemption from the ADEA granted to the states from that act's applicability to law enforcement officers and firefighters. Cf. Brotherhood of R.R. Trainmen v. C.R.R. of N.J., 47 N.J. 508, 518 (1966). In our view, the language respecting transfers is thus limited solely to transfers which are not bonafide promotions, but merely efforts to evade the applicability of the retirement provisions of state law.
An interpretation of New Jersey's statutes which allows high-ranking supervisors who are not involved primarily and directly in firefighting activities to fall outside the ambit of the mandatory early retirement provisions of P & FRS, and a similar interpretation with respect to such high-ranking officers *331 in law enforcement whose duties are not primarily involved with apprehending criminals, is consonant with a proper interpretation of the ADEA and the LAD. The restriction of mandatory early retirement provisions to other than supervisory positions furthers the basic intent of both the federal and State laws against age discrimination. The exemption granted the states by the 1986 amendments to the ADEA must be construed and interpreted in accordance with the manifest intention of the entire legislation. Obviously, the intent was to limit the situations where early retirement could be mandated. Hence, a sensible interpretation of the definition of firefighter and law enforcement officer is warranted to further the broader purpose of preventing unwarranted age discrimination.
We thus conclude that supervisory law enforcement officers who are not directly involved in law enforcement and supervisory firefighters who are not directly and primarily involved in firefighting are not subject to the federal exception to the allowed mandatory retirement of certain law enforcement officers and firefighters authorized by the 1986 federal amendments to the Age Discrimination in Employment Act and its general prohibitions against age discrimination.

IV
The appellants in the Boylan and Comer appeals argue that there is no rational basis for forcing similarly situated police chiefs and fire chiefs to retire at different ages and that any statute conferring different retirement rights for one group constitutes unconstitutional special legislation and violates equal protection. We note initially that the United States Supreme Court has held that age is not a suspect classification. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520, 524-525 (1976). Unless it is shown that a classification lacks a rational relationship to a legitimate state objective, distinctions may be proper. See Taxpayers Assn. of Weymouth Tp. v. Weymouth Tp., 80 N.J. *332 6, 40 (1976). Under the federal equal protection clause, dissimilar treatment of individuals similarly situated must be governed by an appropriate State interest. Id. at 37; see Raybestos-Manhattan, Inc. v. Glaser, 144 N.J. Super. 152, 185-191 (Ch. Div. 1976), aff'd o.b. 156 N.J. Super. 513 (App.Div. 1978).
The State points out that there is legitimate governmental objective insuring that firefighters and law enforcement officers are physically fit and capable to perform their functions. However, this argument is somewhat irrelevant since we are only talking about supervisors. Nothing in the record before us indicates that a 65 year old mandatory retirement age was established with reference to physical ability. Indeed, the legislative intent in enactment of the retirement programs for police and firemen related as much to the provision of benefits as to retaining qualified persons in firefighting and law enforcement until a reasonable retirement age was reached. See Johnson v. Mayor & Baltimore City Council, supra (472 U.S. at 364, 105 S.Ct. at 2723, 86 L.Ed.2d at 295); Spina v. Consolidated Police & Firemen's Pension Fund Comm'n, supra (41 N.J. at 396). Unless the retirement plans were shown, as is not the case here, to have been a subterfuge to avoid the purposes of the ADEA, there would be no need to consider whether the bonafide occupational qualification (BFOQ) exception would have to apply. See 29 U.S.C. § 623. However, since a subterfuge has neither been shown nor claimed with respect to PERS or P & FRS, there is no basis to inquire into whether the mandatory early retirement ages were established as a BFOQ exception. Since Consolidated[12] is not an operating retirement system as such, there is no basis for a determination that there is a violation of equal protection. Nor do we consider the *333 retirement statutes involved here special legislation. See N.J. Const. (1947) Art. IV, § VII, par. 9. These statutes apply equally to the classifications of firemen and law enforcement officers.
It is also argued that statutory changes are not to be applied retrospectively or in such a manner as to impair intervening rights, including reasonable expectations grounded in justifiable reliance. However, public employee pension rights are essentially in the nature of an expectancy. See Sganga v. Police & Firemen's Pension Fund Comm'n, 2 N.J. Super. 575, 579 (Law Div. 1949). Pensions are considered an employee's reward for honest and efficient service. Ballurio v. Castellini, 27 N.J. Super. 113, 119, aff'd 29 N.J. Super. 383 (App.Div. 1954). But there is no requirement that an employee avail himself of the pension at an early date. The revival of the enforceability of the provisions of the pensions statutes in effect in 1983 did not result in divestiture or termination of pension rights, but rather the determination of the required retirement date on which the pension benefits were due and payable. Hence, there is no merit in plaintiffs' argument that the statute should be applied prospectively because it affects their substantive rights. Indeed, as previously noted, the federal statute enacted in 1986 took effect prospectively on January 1, 1987.

V
Claims by certain plaintiffs that accrued sick leave, vacation time, personal leave and other pension benefits are affected are without merit. Such items are not entitlements which are governed by the pension statutes. Moreover, there has been no claim that any plaintiff is currently on sick leave or that other statutes or regulations do not apply with respect to eligibility and adjustment for such items.
We turn next to plaintiff Fiorentino's contention that the age at which he can be mandatorily retired from his employment is to be determined under the terms of the collective *334 bargaining agreement which covers his employment. A provision therein stated that employees were to "retain all pension rights under New Jersey Law." When the labor agreement was entered into the ADEA prohibited age discrimination against individuals under the age of 70. The 1986 amendments completely removed the upper age level contained in 29 U.S.C. § 631, except that a special rule applied to firefighters and law enforcement officers.
The 1986 amendments to the ADEA contain language to the effect that the amendments are not applicable to collective bargaining agreements in effect on June 30, 1986 and which end after January 1, 1987 thereby permitting continued employment without regard to age. 100 Stat. 3342 § 7 (referenced in 29 U.S.C. § 623 note (1986)). Notwithstanding such a statement, the labor agreement does not supersede the federal statute. The labor agreement relied on here merely states that existing pension rights are retained. The applicable New Jersey laws have consistently provided that police and firemen must retire at age 65. Those statutes were never repealed. They were only temporarily unenforceable, and as previously discussed, the 1986 federal amendments merely revived the enforceability of those provisions. In addition, the pension statutes provide when credit years no longer accrue. The municipalities are not free to choose on an individual basis the retirement ages of law enforcement officers and firefighters.
Appellant Fiorentino also argues that the decision to terminate him from his employment as a member of the Ocean City Fire Department is vested in the municipality, and is not mandated by State law. He relies for this proposition on N.J.S.A. 40A:14-7 which authorizes municipalities to create and establish fire departments and provide for their maintenance and control, and to:
... appoint such members, officers and personnel as shall be deemed necessary, determine their terms of office, fix their compensation and prescribe their powers, functions and duties and adopt and promulgate rules and regulations *335 for the government of the department and force for the discipline of its members.
Fiorentino also asserts, without citation of authority, that State law rarely prohibits participation in the police and pension system after the age of 65.
We note initially that N.J.S.A. 40A:14-17 provides:
Except as otherwise provided by law, in any municipality having permanent members and officers of a paid or part-paid fire department and force, the employment of said members and officers shall be for an indeterminate term and continuous during good behavior and efficiency.
Obviously, this section is by its own terms subject to provisions of other laws. The Legislature has provided that individuals who are participants in the P & FRS and PERS must retire at specified ages. Since the municipality, as a creature of the State, is subject to State law, Dome Realty, Inc. v. Paterson, 83 N.J. 212, 225 (1980), it may not establish mandatory retirement ages which are inconsistent with the statutes governing the applicable retirement system. See Fair Lawn Ed. Assn. v. Fair Lawn Bd. of Education, 79 N.J. 574, 586-587 (1979). Thus, the municipality is bound by the requirements for retirement in the State pension laws to the extent enforceable under the 1986 amendments to the ADEA.
Accordingly, we remand all of the appeals herein to the Division of Pensions for reconsideration in light of our opinion and for determination of whether the respective duties of each of the plaintiffs in their individual positions fall within those categories delimited in 29 U.S.C. § 630(j) and (k). To the extent that the firefighters as so defined, and limited by our opinion herein, are not primarily and directly involved in the types of duties referred to in the cited section, they are not subject to mandatory early retirement. Likewise, to the extent that plaintiffs are "law enforcement officers" who are not primarily involved in the work defined in the federal statute, they are likewise excepted from the mandatory early retirement provisions of the New Jersey pension acts. As we have observed, the qualification with respect to those "transferred to a supervisory or administrative position" does not apply to bonafide *336 promotions. Hence, to the extent that the plaintiffs are not involved in what we may refer to as "active" law enforcement or firefighting efforts, they would not be subject to the mandatory early retirement provisions of the subject pension statutes. However, to the extent that such personnel are susceptible to such assignment on a more than occasional basis they might well not be excepted from the mandatory retirement provisions. These matters are best determined in the first instance by the Division and the Pension Commission after development of a record. The determination of the Division is modified in accordance herewith. The stays of retirement previously ordered are continued pending the determination of the hearings on the remand.
Remanded for further proceedings consistent herewith. Jurisdiction is not retained.
NOTES
[1] There is also a Consolidated Police and Firemen's Pension Fund (Consolidated) which was established in 1952 to administer pension systems established under L. 1920, c. 160, for municipal police and firemen pension systems for police and firemen who did not become subject to the P & FRS established in 1944. We were advised at oral argument in the Boylan appeal that there are only three or four participants left in that Fund, and that all are widows. Hence, we need not deal with any mandatory retirement ages under any other governmental pension plans. Four separate appeals were taken from the February 19, 1987 directive issued by the Director of the Division of Pensions in reliance on Formal Opinion No. 12 (1987) of the Attorney General. Essentially all appeals involve the same or related issues. We consolidate the separate appeals solely for the purpose of this opinion.
[2] See generally Johnson v. Mayor & Baltimore City Council, 472 U.S. 353, 364-365, 105 S.Ct. 2717, 2723-24, 86 L.Ed.2d 286, 295 (1985); E.E.O.C. v. Wyoming, 460 U.S. 226, 256, 103 S.Ct. 1054, 1070, 75 L.Ed.2d 18, 41 (1983) (Berger, C.J. dissenting); United Air Lines, Inc. v. McMann, 434 U.S. 192, 198-202, 98 S.Ct. 444, 448-450, 54 L.Ed.2d 402, 410-413 (1977); E.E.O.C. v. State of New Jersey, 620 F. Supp. 977, 995-998 (D.C.N.J. 1985). Cf. Hozer v. State, etc. Police & Firemen's Pension Fund, 95 N.J. Super. 196, 199 (App.Div. 1967); Note, "Will You Still Need Me ... When I'm Sixty-Four?': Forced Retirement for Executives under the ADEA," 11 U.Balt.L.Rev. 256, 264-266 (1982); Ruzicho and Jacobs, Litigating Age Discrimination Cases, § 1:10 at 23 and § 1:12 at 25 (1986).
[3] Underlined material represents addition by L. 1985, c. 73, § 2, effective October 1, 1985. The bill had originally been conditionally vetoed by Governor Kean who returned it for reconsideration with his recommended amendments which were ultimately adopted by the Legislature.
[4] Underlined material added by L. 1985, c. 73, § 3.
[5] This is the heading which is not technically part of the act. See State v. Greene, 33 N.J. Super. 497, 500 (App.Div. 1953).
[6] We note also that under 5 C.F.R. § 831.906 "[t]he prohibition against the reemployment of firefighters and law enforcement personnel after age 60," required to retire by 5 U.S.C. § 8335(b), does not apply to positions which do not involve "the performance of actual firefighting or law enforcement duties as described in §§ 831.903(a) and 831.904(b)." See 5 C.F.R. § 831.906.
[7] Our reference to law enforcement officer does not include the State Police who are covered by a separate retirement system now known as the "State Police Retirement System of New Jersey." N.J.S.A. 53:5A-4. A federal District Court has held that mandatory retirement at age 55 for State Police Officers (other than the superintendent) was satisfactorily established as a bonafide occupational qualification. E.E.O.C. v. State of New Jersey, 631 F. Supp. 1506 (D.N.J. 1986).
[8] E.E.O.C. v. Wyoming, supra (460 U.S. at 226, 103 S.Ct. at 1054, 75 L.Ed.2d at 18) was decided on March 2, 1983.
[9] The 1978 amendments to 29 U.S.C. § 623(f)(2) appear to reject the Supreme Court's decision in McMann. See also, S.REP. No. 493, 95th Cong., 2d Sess. 1, reprinted in 1978 U.S.CODE CONG. & ADMIN.NEWS 504, 513; and H.R. CONF.REP. NO. 950, 95th CONG., 2d Sess. 7, reprinted in 1978 U.S.CODE CONG. & ADMIN.NEWS 504, 529.
[10] The federal Civil Service regulations define supervisory and administrative positions and allow pension credits under prescribed conditions. See 5 C.F.R. §§ 831.903(c)(3)(i) and (ii) and 831.904(b)(3)(i) and (ii).
[11] Curiously, the federal regulations (which are concerned with benefit entitlements and the earning of service credits) also exclude a large category of people who could be considered law enforcement officers in New Jersey. In 5 C.F.R. § 831.903(a), the regulations state:

... Law enforcement officer does not include an employee in a position the primary and regular duties of which involve maintaining law and order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than persons who are suspected of violating the criminal laws of the United States, or whose duties only occasionally or incidentally require the investigation, apprehension, or detention of persons suspected or convicted of violating the criminal laws of the United States. [emphasis supplied.]
[12] None of the appellants can rely on the provisions of the Consolidated fund laws since their enrollment in P & FRS and PERS is to the exclusion of other pension statutes. See N.J.S.A. 43:16A-19. As noted, Consolidated is presently essentially nothing more than a fund to maintain benefits for the few surviving participants (widows of former members) under presently non-existent pension plans.