LARRY RYAN, PLAINTIFF, v. BIEDERMAN INDUSTRIES,[1] DEFENDANT–APPELLANT, AND HARTZ MOUNTAIN ASSOCIATES INC.,[2] DEFENDANT–RESPONDENT, AND M & W WAREHOUSE, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 16, 1988—Decided March 14, 1988.

---

[1]Appellant's name as tenant under the lease is Bidermann Industries U.S.A., Inc. Despite the misspelling in the caption, we refer to appellant herein as Bidermann.

[2]Respondent asserts that it was improperly impleaded in the complaint as "Hartz Mountain Industries, Inc." Respondent denominates itself as Import Hartz Associates.

Before Judges PETRELLA and BAIME.

*Donald M. Garson* argued the cause for appellant Biederman Industries (*Joseph Buttafuoco,* attorney; *Joseph Buttafuoco* on the brief).

*Leon S. Wilson* argued the cause for respondent Hartz Mountain Associates Inc. (*Horowitz, Bross, Sinins & Imperial,* attorneys; *Leon S. Wilson* on the brief).

No briefs were filed on behalf of any other party.

PER CURIAM.

Defendant-appellant Bidermann Industries U.S.A., Inc. (Bidermann) appeals from a summary judgment granted to codefendant Hartz Mountain Associates Inc., whose true name is Import–Hartz Associates (Hartz), on the latter's cross-claim for indemnification. Indemnity was granted based on provisions in the lease between Bidermann and codefendant Hartz. We affirm.

Plaintiff Larry Ryan brought the underlying action for personal injuries incurred in a slip and fall accident on an outside

metal stairway on January 7, 1984 at premises leased by Bidermann from Hartz in Secaucus, New Jersey. The record does not disclose the weather conditions at the time. Hartz became a party defendant after Bidermann, pursuant to leave granted, filed a third-party complaint[3] against it and M & W Warehouse seeking contribution and indemnification. Ryan was thereafter granted leave to amend its complaint to add Hartz and M & W Warehouse as direct defendants. Hartz cross-claimed against Bidermann for contribution, common law indemnification and contractual indemnification.

Under paragraph 8.1 of the August 10, 1982 lease, the parties had agreed:

8.1 Tenant covenants and agrees, at its sole cost and expense to indemnify and save harmless Landlord against and from *any and all loss, cost, expense and liability, from claims by third parties including without being limited to, reasonable attorney's fees and court costs, arising from or in connection with* (a) the conduct or management of, or from, any work or thing whatsoever done in or on the Building prior to or during the Term other than any work or thing done by or at the instance of Landlord, or any of its agents, contractors, licensees, servants or employees; (b) any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms of this Lease; (c) *any act or negligence of Tenant, or any of its agents, contractors, servants, employees or licensees; or (d) any accident, injury or damage whatsoever caused to any person, firm or corporation occurring during the Term, in or on the Building other than those caused by Landlord's or its contractor's, agent's, licensee's servant's,*

---

[3]We observe from a copy of the August 10, 1982 lease between Import–Hartz Associates and Bidermann Industries U.S.A., Inc. that appears in appellant's appendix that Article 12.1 requires the tenant to carry liability insurance with the landlord as a named insured (as well as other types of insurance). Article 12.3 requires the tenant to deliver certificates of such insurance to the landlord. The record does not disclose the existence of such insurance, but in response to the court's inquiry appellant's counsel advised that such insurance exists and that the insured's name is Bidermann. Such insurance would negate Bidermann's claim against its landlord for claims arising under the policy coverage. See *Ganger v. Moffett,* 8 *N.J.* 73, 79–80 (1951); see also 8B *Appleman, Insurance Law and Practice,* § 4942 at 69–70 (1981). Even if Bidermann failed to obtain the requisite insurance it could not recover for such claims. See *Antenucci v. Mr. Nick's Mens Sportswear,* 212 *N.J.Super.* 124, 131 (App.Div.1986).

*or employees negligence;* and in case any action or proceeding is brought against Landlord by reason of any claims covered by the foregoing indemnity Tenant upon notice from Landlord agrees to resist or defend such action or proceeding by counsel reasonably satisfactory to Landlord. Counsel for Tenant's insurance carrier shall be deemed satisfactory. [Emphasis supplied].

Pursuant to Article 9 of the lease Bidermann was responsible for maintenance of the building.

Ryan's personal injury action was settled with Bidermann for $3,500. Hartz then moved for judgment on its contractual indemnification claim against Bidermann. Judge McLaughlin granted Hartz summary judgment. Hartz was also awarded attorneys' fees and costs in defending the suit pursuant to the provisions of the lease agreement.

The trial judge concluded that "the only way that either Bidermann or Hartz could be liable to the plaintiff would be if plaintiff were able to show that the property was improperly maintained." Since Bidermann was responsible for maintenance of the building, and was contractually bound to indemnify Hartz for any costs arising therefrom, summary judgment was granted in favor of Hartz.

Bidermann argues on this appeal that summary judgment was improper as questions of fact existed which prevented a grant of such relief. This assertion is based on Ryan's answer to an interrogatory asked by Bidermann. Bidermann asked Ryan to "[e]numerate specifically all of the things you contend the party serving these interrogatories did which should not have been done." Ryan responded by stating:

The aforesaid metal stairways were negligently and carelessly maintained, failed to have abrasive material; were extremely slippery; were exposed to the elements causing a danger of slipping; and were otherwise unsafe for use by the plaintiff.

During the hearing on the summary judgment motion Bidermann's attorney argued that "any work done by the landlord prior to our assuming the lease would not be under the indemnification clause of the lease." The contention was that the

abrasive material[4] referred to in Ryan's answer to the interrogatory should have been added during construction and that Hartz was precluded from obtaining indemnification under Article 8.1(d) of the lease because Ryan's injury was caused by the landlord's negligence.

The judge observed that Ryan's pleadings only referred to negligent maintenance, not defective construction or design defect, and that Ryan had never raised any issue of design defect. If Ryan could not show improper maintenance, he would have had no cause of action. If Ryan was able to *claim* or to establish negligent maintenance by Bidermann, then Hartz was entitled to indemnification because Article 9 of the lease required Bidermann to maintain the premises. Under Article 8.1(a) Bidermann undertook to indemnify Hartz for injuries to third persons, except for "any work or thing done by or at the instance of Landlord, or any of its agents, contractors, licensees, servants or employees; ...." This indemnification provision, including the indemnification under subsection (d) was directed to acts other than that of the landlord or its agents. See *Gulf Oil Corp. v. ACF Industries, Inc.*, 221 *N.J. Super.* 420 (App.Div.1987).

In granting summary judgment Judge McLaughlin stated:
> The conduct or management of the building was under the direction of Biederman.
>
> The maintenance of the building was under the direction of Biederman. It was the maintenance that [formed] [sic] the basis for the plaintiff's claim.
>
> Accordingly, under Paragraph 8.1 of the lease, the tenant Biederman agreed to indemnify and hold the landlord harmless for any cost arising from the claim.
>
> Accordingly, the motion for summary judgment on behalf of Hartz on their cross-claim will be granted.

■ In our view, and without reference at this time to *N.J.S.A.* 2A:40A–1, which we discuss *infra*, the judge correctly concluded that there were no genuine issues of material fact

---

[4]It is not clear what plaintiff meant by abrasive materials. He could have been referring to rock salt, sand or the like in view of the time of year involved when the accident occurred.

which would preclude summary judgment. *R.* 4:46–2; *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75 (1954). The plaintiff Ryan had not alleged negligent construction. He had claimed negligent maintenance. Hence, the trial judge focused appropriately only on whether Hartz was entitled to indemnification under Article 8.1 of the lease. There can be no dispute that Bidermann was responsible for maintenance under the lease. The lease clearly provides for indemnification by Bidermann to Hartz for *claims* arising out of improper maintenance. Ryan's claim was within that category and hence Bidermann was contractually obligated to indemnify Hartz.

▪ There is no basis for allowing Bidermann to contend that the pleadings should be amended to conform with Ryan's answers to interrogatories so as to change Ryan's claim or Bidermann's undertakings. Bidermann had not asserted such a claim. But even if we consider the appropriateness of an amendment to the pleadings, such amendments are generally considered within the sound discretion of the judge in the interest of justice. *New Mea Const. Corp. v. Harper,* 203 *N.J.Super.* 486, 491 (App.Div.1985) (discussing amendments during trial to conform the proofs to the evidence.) The request to amend the pleading "must be definite and categorical, not vague or unexpressed." *Grobart v. Society for Establishing Useful Mfrs.,* 2 *N.J.* 136, 146 (1949). See also *Essex County Adjuster v. Brookes,* 198 *N.J.Super.* 109, 114 (App.Div. 1984). In any event, there would be a serious doubt as to whether anybody but Ryan could seek to have Ryan's pleadings amended to assert claims not raised by him.

That does not end the issue. Bidermann argues apparently for the first time on appeal that the August 10, 1982 lease indemnification provision was ineffective because the law in effect at the time the lease was entered into, *N.J.S.A.* 2A:40A–1, rendered the indemnification clause unenforceable, and the amendment effective March 13, 1983 to that statute allowing limited indemnification provisions could not be applied retroac-

tively. We could refuse to consider this issue since it was not raised below. See *Blaine v. Ritger*, 211 *N.J.Super.* 644 n. 3 (App.Div.1986), certif. den. 105 *N.J.* 546 (1986). Alternatively, we might consider the issues to have been waived. See *Nieder v. Royal Indemnity Ins. Co.*, 62 *N.J.* 229, 234 (1973). However, we have determined to consider the issue on the merits.

*N.J.S.A.* 2A:40A–1 presently reads:

A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract, agreement or purchase order, relative to the construction, alteration, repair, maintenance, servicing, or security of a building, structure, highway, railroad, appurtenance and appliance, including moving, demolition, excavating, grading, clearing, site preparation or development of real property connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or *resulting from the sole negligence of the promisee*, his agents, or employees, is against public policy and is void and unenforceable; provided that this section shall not affect the validity of any insurance contract, workmen's compensation or agreement issued by an authorized insurer. [Emphasis supplied].

The language emphasized in the above quotation was added by a 1983 amendment to this section. Hence, at the time the lease was entered into on August 10, 1982 the emphasized language was not in the statute and the law was in the form enacted by *L.* 1981, *c.* 317. A strict reading of *N.J.S.A.* 2A:40A–1 as it existed in 1982, made an attempt to obtain contractual indemnity in an agreement covering maintenance of a building unenforceable. Nevertheless, we reject Bidermann's argument that the indemnification clause in the lease was also unenforceable at the time of the incident involving Ryan.

We do this because the 1983 amendment was ameliorative and intended to clarify the original intent of the 1981 statute. Hence, the 1983 amendment may be applied retroactively to restore enforceability to the indemnity clause. This issue was discussed in *Miller v. Hall Bldg. Corp.*, 210 *N.J.Super.* 248 (Law Div.1985), with respect to the amendment of *N.J.S.A.* 2A:40A–1 by *L.*1983, *c.* 107. *Miller* acknowledged that generally statutes are given prospective application, but that there were exceptions. *Id.* at 253. Such exceptions are dis-

cussed in *Gibbons v. Gibbons*, 86 *N.J.* 515, 522–523 (1981) and include situations: (1) where a contrary intent has expressly or implicitly been expressed by the Legislature; (2) where the statute is ameliorative or curative, and (3) where there is no clear expression of legislative intent but the expectations of the parties warrant retroactive application of the statute. See also *Miller v. Hall Bldg. Corp., supra* (210 *N.J.Super.* at 253).

The court in *Miller* found no legislative intent limiting the statute prospectively in application. Rather, the stated purpose of the amendment was to "clarify the purpose behind the original enactment." *Miller v. Hall Bldg. Corp., supra* (210 *N.J.Super.* at 253). The assembly committee statement to Assembly Bill No. 590 of 1983, which became *c.* 107, states:

This bill amends a recently-enacted law, P.L. 1981, c. 317, which prohibits hold harmless clauses in construction contracts which indemnify the promisee for any damages regardless of the extent of his negligence. For example, an agreement between a property owner and a general contractor under the terms of which the general contractor agrees to hold the owner harmless from any and all liability as a result of the negligence or wrongdoing of the general contractor and/or the latter's subcontractors, is under the law against public policy and is void and unenforceable. It is the contention of Assembly Bill No. 590 that the present law as originally conceived was nothing more than prohibition to prevent indemnification against one's own negligence. However, as a result of Senate committee amendments to the original bill, certain conventional and proper hold-harmless clauses were prohibited.

     *       *       *       *       *       *       *       *

By way of background, the reason for these amendments follows: It has been a well-settled principle, determined by the courts of this State, that there is no essential public policy impediment to certain hold harmless agreements. The principle derives from recognition that, ordinarily, the responsibility for risk of injury is shifted by the primary parties to insurance carriers, and the parties should be left to determine how the insurance burdens shall be distributed. In effect, it is an allocation of costs which, in practice, finds its way into the contract price. [Assembly Judiciary Law, Public Safety and Defense Committee Statement to Assembly, No. 590 of 1983].

The reasoning of *Miller* in holding that the 1983 amendment falls within the second exception in *Gibbons* since the amendment is ameliorative and curative is persuasive. The 1983 amendment "merely resurrect[ed] the language deleted by the Senate in enacting former Section 2A:40A–1 and thereby re-

stored conventional indemnity and 'hold harmless' agreements to their former validity." *Miller v. Hall Building Corp.*, *supra* (210 *N.J.Super.* at 254). Furthermore, *Miller* noted that "retroactive application of the amended section in this case merely fulfills the bargained for expectations of the parties." *Id.*

We also find somewhat analogous *Boylan, et al v. State of New Jersey,* 222 *N.J.Super.* 313, 325 (App.Div.1987), wherein we acknowledged that federal preemption did not repeal a New Jersey statute, but rendered it unenforceable. Hence, on the lifting of the federal preemption, the statutory provision again became enforceable. *Id.* at 325–326. We think a similar principle should apply here. Even if the indemnity provision, or a portion of it, was temporarily unenforceable, the lifting of the bar allowed enforcement of this arms-length agreement between two commercial entities.

■ Since the indemnification clause contained in Article 8.1 does not indemnify Hartz for its own negligence as promisee, the clause is valid under *N.J.S.A.* 2A:40A–1, as amended in 1983, and enforceable by Hartz against Bidermann. Retroactive application will fulfill the bargained for expectations of the parties.[5] See also *Antenucci v. Mr. Nick's Mens Sportswear,* 212 *N.J.Super.* 124, 131 (App.Div.1986).

Next Bidermann argues that if it is required to indemnify Hartz, it is not liable for attorneys' fees unless incurred in defense of Hartz regarding a claim by a third person. It thus argues that Bidermann is not liable for legal fees incurred by Hartz to obtain indemnification. The lease provides for indemnification of Hartz " . . . from claims by third persons including

---

[5]We do not have occasion, in light of our decision, to consider whether notwithstanding the language of the agreement Hartz would have a cause of action for common law indemnification against Bidermann. See *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 *N.J.* 55 (1960). See also *Restatement on Restitution* § 76 (1937). Cf. *Antenucci v. Mr. Nick's Mens Sportswear, supra* (212 *N.J.Super.* 124).

without being limited to reasonable attorneys' fees and court costs." The trial judge granted recovery in favor of Hartz for attorneys' fees and costs in defending Ryan's suit and on its indemnification claim.

On this appeal Bidermann claims that it should not be required to pay Hartz' attorneys' fees for prosecution of a suit upon the indemnity agreement itself. Bidermann contends that "once the plaintiff's complaint was settled all legal fees incurred by Hartz thereafter, were no longer in defense of a claim by a third person because Mr. Ryan no longer had a claim." Hartz argues in opposition that attorneys' fees incurred in seeking to enforce the indemnification are a direct result of plaintiff's complaint and, therefore, Bidermann should be liable for attorneys' fees incurred by Hartz in connection with the action.

A similar issue was presented in *Johnson v. Johnson*, 92 *N.J.Super.* 457 (App.Div.1966) where the divorce settlement agreement contained an indemnification by the former husband to hold the wife harmless from loss or damage, including legal expenses. Plaintiff claimed indemnification not only on the basis of claims covered by the indemnification agreement, but for attorneys' fees. The court held that the indemnification clause only meant defendant was responsible for legal expenses incurred by plaintiff in connection with the goods and services referred to in the agreement. *Id.* at 463. The court reasoned that the parties could have provided that plaintiff was to be paid for attorneys' fees for services rendered prosecuting the suit upon the indemnity agreement. Since that was not so provided in that case, plaintiff was not entitled to such fees. *Id.* [6]

The reasoning in *Johnson* is inapposite here. Hartz is entitled to counsel fees and costs of suit incurred in seeking to

---

[6]This holding accords with the reasoning in the unreported decision relied on by Bidermann of *Teshara v. Rite-Aid Corp. v. Sobov*, A–5312–85.

enforce indemnification under Article 8.1, and we note that Bidermann agreed therein to defend any action brought against the landlord. In addition, a separate provision in Article 8.2 provides:

> Tenant agrees to pay, and to indemnify Landlord against all legal costs and charges, including reasonable counsel fees lawfully and reasonably incurred in obtaining possession of the building after default of Tenant, or upon expiration or earlier termination of the Term, *or in enforcing any covenant or agreement of Tenant herein contained, provided Landlord is successful in any such action.* [Emphasis supplied].

This provision reinforces Hartz' claim for reimbursement of counsel fees. Hartz was seeking to enforce Bidermann's agreement to indemnify. Hence, Hartz is entitled to attorneys' fees and costs for prosecution of its indemnity claim as well as for defense of Ryan's suit.

Affirmed.